**MINA HAKAKIAN (SBN 237666)**
mhakakian@wwlawcorp.com
**WILLIAMS WOLLITZ HAKAKIAN PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**HB SURGICAL ARTS LLC**

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| **HB SURGICAL ARTS LLC**, a California Corporation,<br><br>                    Plaintiff,<br><br>    vs.<br><br>**UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE INSURANCE COMPANY;** and **DOES 1-100,**<br><br>                  Defendants. | **Case No.:** 8:23-cv-00402<br><br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |

Plaintiff, HB Surgical Arts LLC, a California corporation, ("Plaintiff" or "HB Surgical"), alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act of 1974 ("ERISA").

2.     This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims

– 1 –

alleged herein occurred in this judicial district where the breaches took place, and the Defendants conduct a substantial amount of business in this judicial district.

## I.   THE PARTIES

### a.   The Plaintiff

3.      HB Surgical is a corporation organized under the laws of the state of California, with its principal place of business located in Huntington Beach, California, within the judicial Central District of California- Southern Division.

4.      HB Surgical does business through and by way of a surgery center located in Huntington Beach, California.  The surgery center, operated by HB Surgical, maintains state of the art medical technology devices and other high-quality equipment necessary to carry out specialized surgical procedures for medical patients. HB Surgical performs sophisticated open surgical operations as well as minimally invasive techniques.  Typical procedures performed at the HB Surgical facility include colonoscopies, otorhinolaryngological (ENT) surgery, orthopedic, eye, and podiatry surgery, general surgery, gastrointestinal surgery, pain management, and minimally invasive surgeries, such as gastric sleeve bypass and adjustable gastric banding.  HB Surgical provides surgical services on behalf of a wide variety of patients, many of whom were insured under the terms of group health insurance plans that are governed by ERISA.

### b.   The Defendant

5.      Plaintiff is informed and believes Defendants United Healthcare Services, Inc., and United Healthcare Insurance Company (hereinafter jointly "United" and/or "United Defendants") collectively constitute one of the largest health insurance entities in the United States.

6.      Plaintiff is informed and believes that Defendant United Healthcare Services, Inc. ("United Healthcare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota, and that this entity acts as an

– 2 –

insurance operating entity within the United family of companies.  Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance operations in California and other states, whether it be under the name United Healthcare or some other operating name. Plaintiff is informed and believes that United Healthcare is wholly owned by UnitedHealth and serves as UnitedHealth's operating division.

7.    Plaintiff is informed and believes that Defendant United Healthcare Insurance Company ("UHC") is a Minnesota corporation with its corporate headquarters in Minneapolis, Minnesota, and that this entity acts as an insurance underwriting entity within the United family companies.  Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance underwriting in California and other states, whether it be under the name United Healthcare or some other insurance underwriting entity name.

8.    Plaintiff is informed and believes that United provides multiple services and functions in the realm of health insurance including: (1) underwriting its own health insurance plans for individuals and families; (2) providing services as an administrator of ERISA health insurance plans on behalf of employers and other entities (hereafter referred to as "ERISA Plans" or a "Plan" or "Plans"); and (3) serving as the insurance underwriter of ERISA Plans which offer health insurance benefits to employees and/or members and their families.  HB Surgical is informed and believes that in each of these functions and capacities United acted as the entity with the discretion and actual control to administer, decide, and pay healthcare benefit claims from insured members and healthcare service providers based on United's own coverage determination guidelines and United's own claims handling policies and procedures.

9.    HB Surgical is informed and believes that United performs its claims handling services for a multitude of ERISA Plans, some of which are self-funded, and

some of which are funded by United acting in its capacity as the insurance underwriter for the Plan.  Whether the Plan is self-funded or fully insured, Plaintiff is informed and believes that United provides Plan members with Plan documents, interprets and applies the Plan terms, makes coverage and benefits determination, handles the appeals of coverage and benefits decisions, and makes payment to Medical Providers for services rendered.  In simple terms, HB Surgical is informed and believes that it was United, and not the ERISA Plans themselves, that had the responsibility and actual control to make benefit determinations for the surgical services claims of HB Surgical that gives rise to this benefit recovery action.

10.     Plaintiff is informed and believes that United carried out its multiple services and functions as a healthcare-benefits claims administrator.  Acting with respect to seven members insured under ERISA Plans during the period March 28, 2017 through May 1, 2021, United reviewed and evaluated benefits payment claims for surgical services provided by HB Surgical.  HB Surgical typically provided surgical procedures, accompanied by ancillary healthcare services such as anesthesiology, pre-operative functions and tasks, pharmaceutical drug administration, as well as use of a surgery and post operative recovery room facilities, medical supplies, and equipment.  As discussed hereinafter in this Complaint, Plaintiff has billed United for its surgical services, but United has materially and improperly denied and/or underpaid the benefit claim amounts due and owing to HB Surgical for the services rendered.

11.     As a condition to the provision of services at HB Surgical, each patient signed a written agreement which assigned their ERISA Plan rights and benefits to Plaintiff in their entirety.  The assignment agreement designates Plaintiff in such a manner that Plaintiff would stand in the shoes of the member/patient to seek, claim, and obtain anything that the member/patient would have been entitled to receive under the applicable ERISA Plan administered by United and/or the out-of-state insurer

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

entities.

12.     HB Surgical does not bring this suit against the ERISA plans for whom United acted as administrator or insurer in connection with HB Surgical's claims in this action.  Plaintiff is informed and believes that United, and not the ERISA plans themselves, exercised actual control over the determination and payment of the benefits claims submitted by HB Surgical.  Plaintiff is informed and believes that United acts as the primary point of contact for members and providers to communicate regarding all aspects of benefits and benefit determination.  Plaintiff is informed and believes that United is the responsible party for administering and interpreting the ERISA Plans at issue in this case and is the one solely responsible for the denial and/or underpayment of benefits and therefore the proper Defendants in the case.

13.     In the event that any of the listed healthcare plans are not subject to ERISA, HB Surgical contends and asserts that the doctrine of supplemental jurisdiction applies with respect to the claims involving such non-ERISA plans.

### c.  **The Doe Defendants**

14.     The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also, in some fashion, legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein. The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

## II.   CORE FACTS UNDERLYING HB SURGICAL'S CLAIMS FOR PAYMENT

15.     HB Surgical provided surgical services from March 28, 2017 through

– 5 –

May 1, 2021 on seven (7) separate occasions for the ERISA Plan members and their dependents where the subject ERISA Plan was either administered and/or underwritten by United.  In total, HB Surgical has performed seven (7) surgical services events for seven (7) Plan members and/or dependents which are the subject of this lawsuit as identified in Exhibit A.[1]

16.    The seven patients for whom surgical services were provided by HB Surgical in this case are designated by initials herein as Patients CLA-MON, GAR-ORC, JES-SAN, KAR-CIS, MAD-LE, OSC-MAL, and TER-SHA (collectively the "Patients") for privacy.  A summary listing of the Patients, with amounts billed and paid (whether partial payment or zero payment) by United is attached hereto as Exhibit A with the Patient names and identifiers redacted for privacy.

17.    Each of the Patients was or is a member or beneficiary of an ERISA Plan which has either been administered and/or underwritten by United.  The Patients and their participating United plans are as follows:

| PATIENTS IDENTIFIERS | PARTICIPATING PLANS |
|---|---|
| CLA-MON | Danaher Corporation |
| GAR-ORC | Insperity Holdings, Inc. |
| JES-SAN | Currently Unknown |
| KAR-CIS | Danaher Corporation |
| MAD-LE | UnitedHealth Group, Inc. |

[1]    The names and any identifying information about the insured patients are not set forth in this Complaint to protect patient privacy.  Plaintiff will make the identifying information available to Defendants pursuant to an appropriate protective order and will request that patient information also be subject to appropriate privacy protection during the litigation proceeding in this Court.

| OSC-MAL | Danaher Corporation |
| TER-SHA | Payne and Fears, LLP |

18.    When Plan members and/or their dependents came to HB Surgical for surgical services they would present medical insurance cards in the name of United. The relevant insurance contact information on each Plan member's medical insurance card would direct HB Surgical to United's office location and telephone number. A true and correct copy of an exemplar patient insurance card is attached hereto as Exhibit B.

19.    In each case, HB Surgical's practice and custom was to have its office staff representative contact a United representative by telephone for benefit eligibility confirmation and member coverage verification prior to performing any surgical services.  The practice was that HB Surgical's office representative, and the United entity representative would discuss the proposed surgery event by telephone in advance of the services being performed, and in each such telephone communication the United entity representative would advise HB Surgical's representative that coverage existed for the patient and benefits were properly payable to HB Surgical's as an "out-of-network" provider.  The following sets forth in summary form the substance of the telephonic communications between HB Surgical's representative and the United entity representative which occurred prior to surgery services being performed in connection with HB Surgical's claims for Patients asserted in this case:

a)  HB Surgical's representative would call United's phone number, as identified on the member identification card presented by the patient.

b)  The answering party would identify himself or herself as a representative of United, thereby confirming to HB Surgical that the communication was with an authorized claim administrator and/or underwriter for the

ERISA Plan.

c)  The United representative would confirm that coverage existed under the subject ERISA plan for the out-of-network provider seeking surgery eligibility verification.

d)  In each call, the HB Surgical representative advised the United representative of the identity of the Plan member or dependent, and that the purpose of the call was to verify the existence of coverage for the patient and the eligibility of HB Surgical for payment of benefits as an out-of-network provider.

e)  In each call, the United entity representative verified that HB Surgical, as an out-of-network provider, was eligible to receive benefits payment under the subject plan.

f)  United entity representatives advised HB Surgical of the percentages of coverage for out-of-network claims; and whether benefits would in fact be payable to HB Surgical based on the CPT codes provided. [2]  The United entity representative would also advise HB Surgical whether specific pre-authorization for the proposed surgical procedure was required.

g)  In instances where authorization is required, HB Surgical obtained authorization to perform the surgical events.  A clean exemplar copy of a

---

[2]     CPT Code is the medical procedure descriptive identifier - - CPT means "Current Procedural Terminology". The CPT Code is a medical code maintained by the American Medical Association through the CPT Editorial Panel.  The CPT codes set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among physicians, coders, patients accreditation organizations, and payors for administrative, financial, and analytical purposes.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

verification call memorization is attached hereto as Exhibit C.

20.     After the United representative had verified that the specified treatment was covered and that HB Surgical was eligible for payment of ERISA Plan benefits, HB Surgical provided services for the surgery events for which verification was obtained.

21.     HB Surgical reasonably relied on the United telephonic representation with respect to Patients at issue in this case by providing surgery services in response to the United affirmation that HB Surgical was eligible to receive benefits.  But for the advance representations of the United entity representatives in setting out the eligibility for benefits and the applicable payment methodology, HB Surgical would not have provided or continued to provide surgery services to the Patients.

## III.    PLAINTIFF'S BILLINGS SUBMITTED TO UNITED PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM PAYMENT

22.     After the United representative had verified that the specific treatment was covered and that HB Surgical was eligible to receive benefits, HB Surgical provided the following services identified here by CPT Code for which verification was obtained.

| PATIENT IDENTIFIERS | DATE OF SERVICE | CPT CODE | SURGERY DESCRIPTION |
| --- | --- | --- | --- |
| CLA-MON | 03/09/2020 | 15823 | Blepharoplasty |
| GAR-ORC | 03/28/2017 | 45380 | Colon/EGD |
| JES-SAN | 04/29/2017 | 45380 | Colonoscopy |
| KAR-CIS | 07/15/2019 | 11420 | Excision Lesion |
| MAD-LE | 05/01/2021 | 43239 | EGD |
| OSC-MAL | 07/27/2019 | 43239 | EGD |

– 9 –

| TER-SHA | 10/31/2017 | Currently Unknown | GI |

In connection with each of the claims where services were provided, HB Surgical has billed United for services rendered to ERISA Plan members and their dependents.  HB Surgical's billing forms were submitted on UB-04, a standard industry-wide claim submittal form for out-of-network healthcare providers.  Each claim form identified the provider's name and address, the patient's name, address, sex, and ID number, the date of service, CPT Code, and the nature of the services rendered.  Each of Plaintiff's claim billing forms set forth all requisite information in standard terminology with sufficient detail to enable United to consider and pay the claim in the ordinary course of business. On each UB-04 claim form submitted to United by HB Surgical, HB Surgical also marked an "X" in box 53, which affirmed that HB Surgical was asserting its claim for payment pursuant to a patient assignment of benefits.

23.    The charges for healthcare services submitted by HB Surgical to United were in all instances usual, customary, and reasonable, and in accord with HB Surgical's charges to patients insured by entities other than the subject plans in this case.  United has abused its discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay HB Surgical's claims in accordance with ERISA requirements, practices and provisions, and HB Surgical has suffered resulting damages in an amount to be proven at trial.

## IV.    HB SURGICAL HAS STANDING TO PURSUE CLAIMS AGAINST UNITED UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

24.    ERISA governs all aspects of health and medical benefits under ERISA plans and authorizes a civil action to recover unpaid benefits and attorney's fees.  HB Surgical has standing to bring this lawsuit arising from its assignments from patients.

25.     United is the proper party defendant for this ERISA benefits recovery action.  *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

## V.     HB SURGICAL HAS EXHAUSTED ADMINISTRATIVE REMEDIES

26.     For the claim events in this action, United provided Explanation of Benefits ("EOB") documents which purported to explain United's payment denial and/or reduction with respect to HB Surgical billing submittals.  The EOBs were woefully deficient in their explanations of the purported grounding for the non-payment and/or denial of HB Surgical's bills.  HB Surgical appealed five of the billing reductions and denials asserted in connection with the claims in this case.  However, HB Surgical's appeals have been futile and have not resulted in additional payment.  Both United's EOBs and responses to HB Surgical's appeals (where responses to appeals were presented) provided vague grounding for United's claim denial and/or reduced payments.

27.     United violated the applicable claims procedure regulations governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1 (g)(1) by failing to provide adequate EOBs and appeal response documents to HB Surgical.  Regulations set forth in 29 C.F.R. section 2560.503-1 (g)(1) "Manner and Content of Notification Benefit Determination" requires that plan administrators provide a claimant with a comprehensive written or electronic notification of any adverse benefit determination:

"The notification shall set forth, in a manner calculated to be understood by the claimant - -

   i.    The specific reason or reasons for the adverse determination;

   ii.   Reference to the specific plan provisions on which the determination is based;

   iii.  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why

– 11 –

such material or information is necessary;

iv.  A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

28.  United failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1.  Among other things, United:

- Failed to set out the specific reason for nonpayment/underpayment of Plaintiff's claims in its responses transmitted to Plaintiff during the administrative review process;

- Failed to reference the specific Plan provisions upon which its nonpayment/underpayment determinations were based;

- Failed to give a description of additional materials or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the nonpayment/underpayment determinations were based;

- Failed to state the nonpayment/underpayment determinations in a manner calculated to be understood by Plaintiff;

- Failed to provide a reasonable opportunity for full and fair review of the nonpayment/underpayment determinations;

- Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff;

- Acted systematically in a manner which rendered the administrative

– 12 –

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

appeal process a futile and meaningless endeavor.

29.     The EOBs and appeal responses provided by United failed to comply with the regulations.  The EOBs and appeal documents provided vague grounding for the claim denial and/or underpayments.  The short statements utilized by United in the EOB did not provide any explanation or basis for denial at all.  For example:

- In an EOB for Patient MAD-LE, United states, "An Out-of-Network provider or facility provided these services.  Member: it was paid according to your plan benefits."  United does not specify, the reason for reduction or denial of payment or identify the specific plan and provisions. A short statement that the out-of-network provider or facility provided their services does not give any explanation or reason at all. This short statement is meaningless and does not provide any basis for denial.  This statement fails to comply with the standards set forth in 29 C.F.R. section 2560.503-1.

- In United's EOB for Patient KAR-CIS, United states, "This payment has been reduced by the amount that is above the eligible expense amount for Out-of-Network services under your plan in your area."  However, the EOB fails to identify the methodology employed to calculate the eligible expense and/or fails to define what constitutes an eligible expense.  This statement again fails to meet the requirements set forth in the regulations. A statement that the payment was reduced by an eligible expense is meaningless non sequitur and provides no explanation or basis for denial at all.  Copies of the EOBs are attached as Exhibit D.

Such vague and non-specific statements do not constitute a final determination with respect to the payment of HB Surgical's bills and do not comply with ERISA regulation 29 C.F.R. section 2560.503-1.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

30.     United violated C.F.R. section 2560.503-1 by failing to provide adequate EOBs and/or appeal response documents to HB Surgical.  The proscribed consequence of a plan administrator's failure to provide a claimant with adequate notice of an adverse benefit determination, is established by 29 C.F.R. section 2560.503-1(1), which provides:

>    "(l) <u>Failure to establish and follow reasonable claims procedures</u>:
>
>    In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

31.     HB Surgical is deemed by law to have exhausted administrative remedies, because United failed to establish and follow reasonable claims procedures as required by ERISA.

## VI.   <u>ASSIGNMENTS TO HEALTH CARE PROVIDERS ARE FAVORED UNDER ERISA LAW</u>

32.     In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989), the Ninth Circuit Court determined that the assignments of patient benefits under healthcare plans are a favored practice to ensure efficiency in the delivery of healthcare services.  "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA." *Misic, supra,* at 1378. Assignees of a claim for collection of healthcare benefits have been permitted to bring suit on the basis of derivative standing.  *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare

providers to whom beneficiaries assigned their benefits claims for medical care from such providers). Granting standing to healthcare providers furthered the congressional purposes behind ERISA, because it enhanced the efficiency and ease of billing among all the interested parties. *See id.* The authority of *Misic* and *Simon* was recently reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.,* (9th Cir. No. 20-56122, January 14, 2022).

## VII. UNITED HAS WAIVED AND/OR IS ESTOPPED FROM ASSERTING ANY "ANTI-ASSIGNMENT" CLAUSES CONTAINED IN THE PATIENTS' HEALTHCARE PLANS

33.     Under federal ERISA law, a healthcare plan and its claim administrators are subject to specific rules where benefits are to be denied with respect to claims of a healthcare provider.

34.     When making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v.  United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir.  2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699,  719 (9th  Cir.  2012) ("*Harlick*").  "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" See *id.*

35.     Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spinedex*, *supra,* 770 F.3d at 1296.  However, a plan administrator can waive the right to enforce an anti-assignment provision.  *See Spinedex supra*. at 1296–97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spinedex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim  process in that case because "there [wa]s no  evidence  that  [the  claims administrator] was aware, or

should have been aware, during the administrative process that [the plaintiff-medical provider] was acting as its patient's assignee").

36.    Waiver is "the intentional relinquishment of a known right."  *Gordon v. Deloitte & Touche LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014) (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) (Waiver occurs when "a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.")).  To show that a claims administrator waived an anti-assignment provision that would otherwise foreclose the healthcare services provider from having statutory standing in an ERISA action, the provider must plead sufficient facts to show that the plan administrator "was aware or should have been aware, during the administrative [claim] process that [the provider] was acting as its patients' assignee."  *See Spinedex*, 770 F.3d at 1297.  HB Surgical has pleaded waiver facts in this action in accordance with *Spinedex* and *Harlick*.  Each HB Surgical billing form included an "X" in the UB-04 forms, which notified the claims administrator that the claim was being pursued by way of an assignment. Moreover, United made partial payments for all claims except for one.  These facts establish that United has waived any purported anti-assignment clause in any of the ERISA Plans and United is estopped from asserting any such clause.

37.    United at all relevant times was aware that Plaintiff was pursuing its claims based on written assignments of benefits.  At no time prior to the filing of the present litigation has United ever asserted that any bar or legal impediment existed in the Plans with respect to Plaintiff's unfettered right to receive payment of benefits as an Out-of-Network provider under the Plans.  Specifically, United never stated any intention to assert any anti-assignment clause during the pre-litigation administrative review process.

///

38.    Further, United is estopped from asserting anti-assignment by the fact that during the claim administration review process it represented that HB Surgical was eligible to receive plan benefits.  The authority of *Spinedex* and *Harlick* on the waiver and estoppel issues was reaffirmed in *Beverly Oaks Physicians Surgery Center, LLC v. Blue Cross and Blue Shield of Illinois,* 983 F. 3d 435 (9th Cir. 2020) ("*Beverly Oaks*").  Under *Beverly Oaks*, the promise that HB Surgical was eligible to receive plan benefits as an out-of-network healthcare provider is sufficient to estop United from asserting a plan anti-assignment clause in this case.

## VIII.  UNITED HAS NO GROUNDING TO ASSERT STATUTE OF LIMITATIONS WITH RESPECT TO PLAINTIFF'S CLAIMS

### A.    United Failed To Provide A Final Determination; And Accordingly, No Statute Of Limitations Has Begun To Run

39.    After *Beverly Oaks* was decided on December 18, 2020, a District Court opinion, *Brand Tarzana Surgical Institute, Inc. v. Aetna Life Insurance Company, Inc., et. al.,* Case No. 18-9434 DSF (AGRx) ("*Brand v. Aetna*"), issued on May 25, 2021, involving anti-assignment defenses, concluded that there was no final determination due to a failure of the insurer to submit adequate notification of adverse benefits determinations.

40.    The District Court in *Brand v. Aetna* cited to Ninth Circuit authority as the basis for its statute of limitations determination:

> *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1989) supports this conclusion. In *White*, the Ninth Circuit held that "[w]hen a benefits termination notice fails to explain the proper steps for appeal, the plan's time bar is not triggered." *Id*. (Dkt. 72, p. 8-9)

41.    The *Brand v. Aetna* court grounded its statute of limitations determination on the ERISA claims procedures regulations:

> In reaching its decision, the Ninth Circuit [in *White*] reasoned that an

– 17 –

administrator should not be permitted to deter a claimant from filing a timely appeal "by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively." *Id*. at 351.  (Dkt, 72, p. 9)

42.     The District Court in *Brand v. Aetna* found the reasoning in *White* was applicable to contractual time limits for filing a civil action in addition to an administrative appeal. The District Court cited to *Bourgeois v. Employees of Santa Fe International Company*, 215 F.3d 475, 482 (5ᵗʰ Cir. 2000) (holding where an employer's failure to give an employee adequate claims procedure information caused the employee to fail to exhaust his administrative remedies and extinguished the employee's time to apply for benefits, his claim should be remanded to the plan administrator and the employer was estopped from arguing the employee's claim was time-barred); and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012) (holding a district court abused its discretion by finding a claim was time-barred because the letter outlining administrative remedies and time to sue was ambiguous and "[a] communication from a claims administrator to a plan participant should clearly apprise her of her rights and obligations under the plan"); and *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006) (finding the failure to comply with ERISA's notification procedures was a "highly significant factor" for determining whether the statutory limitations period began running).

43.     Similarly, in the present action, United EOBs and appeal responses (where responses to appeals were provided) failed to provide adequate notification of the adverse benefits determination as exemplified in Exhibit D.  The EOBs failed to explain the proper steps for appeal.  The EOBs and appeal responses failed to give any basis for denial.  The EOBs and appeal responses were vague, inadequate, and did not provide sufficient information to HB Surgical.  Therefore, the EOBs and appeal responses failed to provide adverse benefits notification sufficient to trigger the running of a statute of limitation.  Absent a final determination, HB Surgical claims

– 18 –

remain fully open for further administration claim consideration and claim resolution at trial.

**B.    A Three-Year Period of Equitable Tolling Applies To Preclude United From Asserting Statute of Limitations as a Defense to the Claims Asserted by HB Surgical in this Action**

**(1)    California Law Applies For Statute of Limitations Purposes As The State Where The Claims Arose**

44.    The statute of limitations in this case is subject to equitable tolling for the period December 18, 2017 to December 17, 2020.  All subject claims fall within the statute if equitable tolling is applied.

45.    ERISA is silent as to the statute of limitations to be applied to the benefits claims asserted by HB Surgical in this case.  Where a statute of limitations is lacking in federal court litigation, the District Court is to look to and apply (i.e. borrow) the most analogous state statute.  The Ninth Circuit has ruled that the applicable borrowing statute in the context of an action for ERISA benefits is the state where the claim for benefits arose.  *Gordon v. Deloitte & Touche LLP Group Long Term Disability Plan,* 749 F. 3d 746, 750 (9th Cir. 2014) (citing *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program,* 222 F. 3d 643 (9th Cir. 2000).

46.    In the present case, the claims for benefits arose in California, and the applicable statute is the 4-year California statute for breach of contract.  *See Northern Cal. Retail Clerks v. Jumbo Markets, Inc.* 906 F. 2d. 1371, 1372 (9th Cir. 1990) However, when a statute of limitations is borrowed, the tolling and suspension provisions which are part of the statute under applicable state law must also be borrowed in the federal court action, and in the present case California equitable tolling provisions will apply to extend the application of the statute.  *See, also, Heimeshoff v. Hartford Life & Accident Ins. Co.,* 571 U.S. 99, 113 (2013) (equitable

– 19 –

tolling of a statute of limitations may be appropriate in extraordinary circumstances).

### (2) Waiver And Estoppel Apply and Provide a Grounding For Equitable Tolling of the Statute of Limitations

47.     The Supreme Court in *Heimeshoff* stated (571 U.S. at 104) that waiver and estoppel may prevent a claims administrator from invoking a limitations period as a defense.  Here, waiver and estoppel both apply to preclude United from asserting statute of limitations without an extension for a 3-year equitable tolling period, as defined below.

### (3) Equitable Tolling Begins To Run No Later Than December 18, 2017 And Continues To Apply Until December 17, 2020

48.     It appeared to be settled law in the Ninth Circuit from and after 2014 that waiver of an anti-assignment clause by a healthcare plan claims administrator would occur if the administrator was aware, or should have been aware during the administrative process that a healthcare provider was asserting claims pursuant to a patient assignment.  *Spinedex, supra,* 770. F. 3d at 1296-97.  Under *Spinedex,* and the Ninth Circuit's 2012 decision in *Harlick,* a healthcare claims administrator was barred by waiver and estoppel from failing to give a reason for a benefits denial during the pre-litigation claim administration process and then raising that reason for the first time when the denial of plan benefits was challenged by the healthcare provider in federal court.

49.     Despite what should have been a controlling body of Ninth Circuit law, a District Court in the Central District of California in 2016 struck out in an unexpected and erroneous new direction in the handling of anti-assignment clauses.  In the case of *Brand Tarzana Surgical Institute, Inc. v. International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan*, District Court No. 2-14-cv-03191-FMO-AGRx ("*Brand Tarzana v. ILWU*") the District Court entered an Order Regarding Cross Motions for Summary Judgment on March 8, 2016.  (Dkt. 69)  In its

– 20 –

1  Order, the District Court concluded that Plaintiff Brand Tarzana had failed to prove

2  waiver of an anti-assignment clause that was contained in the ILWU-PMA Welfare

3  Plan which was the subject of that case.  The District Court Order dated March 8,

4  2016, concluded that the Plan's failure to raise the anti-assignment clause prior to

5  litigation did not constitute waiver, since the anti-assignment clause was not "a

6  substantive basis for denial" (Dkt 69, p. 15)  The District Court wrongly concluded in

7  *Brand Tarzana v. ILWU* - - in direct contradiction to the controlling authority of

8  *Spinedex* and *Harlick* - - that the failure to raise the anti-assignment clause was

9  irrelevant to a pre-litigation denial of a healthcare claim since, until a suit was filed,

10 there was nothing  that occurred within the range of conduct the anti-assignment

11 clauses purported to prohibit.  (Dkt. 69, pp. 15-16) In the *Brand Tarzana v. ILWU*

12 circumstance, where none of the claims at issue were denied in the pre-litigation

13 administrative claim process on the basis of the anti-assignment clause, the District

14 Court erroneously decided that any failure to raise the clause pre-litigation as a ground

15 for denial of plaintiff's claims did not constitute a waiver of the provision.  (Dkt. 69,

16 p. 16) This District Court ruling on March 8, 2016 put in place an unfortunate and ill-

17 conceived framework for addressing anti-assignment clauses which rendered it

18 impossible for healthcare providers to file and pursue ERISA benefits recovery

19 lawsuits where the subject ERISA plans contained an anti-assignment provision.  The

20 erroneous framework which was adopted by the District Court in 2016 was

21 subsequently put aside on December 17, 2020 when the Ninth Circuit put anti-

22 assignment law back on a proper footing in its published *Beverly Oaks* decision, <u>but</u>

23 <u>until corrective action was taken in *Beverly Oaks* in 2020, healthcare providers such as</u>

24 <u>HB Surgical had no realistic or viable means of pursuing their assignment-based</u>

25 <u>healthcare claims in federal court</u>.  In the present action, the healthcare claims which

26 arose during the period when Ninth Circuit law were premised on a mistaken

27 conceptual framework favoring anti-assignment and the claims where the right to

28

– 21 –

bring an action in court matured during this period should be subject to equitable tolling.

50.     Brand Tarzana immediately appealed the adverse District Court ruling of March 8, 2016.  *See* Ninth Circuit Case No. 16-55503, *Brand Tarzana Surgical Institute, Inc v. ILWU-PMA Welfare Plan,* 706 F.App'x 442 (9th Cir. 2017).  However, the Ninth Circuit panel that heard the case on appeal affirmed the District Court ruling by way of a Memorandum Decision filed December 18, 2017.  (Dkt. 76)  The Ninth Circuit in *Brand Tarzana v. ILWU* erroneously agreed with the District Court that the anti-assignment clause could indeed be held in reserve during the pre-litigation claims administrative process, and then be put forward for the first time in benefits recovery litigation as a "litigation defense".

51.     The legal issue of anti-assignment clauses as a "litigation defense" was the subject of ongoing litigation over a period of three years from the time the *Brand Tarzana v. ILWU* Memorandum Decision was entered in the Ninth Circuit (December 18, 2017) to December 17, 2020 when the published opinion in *Beverly Oaks* was issued which put the anti-assignment issue to rest once and for all.  The Ninth Circuit filed its published opinion in *Beverly Oaks,* on December 17, 2020, which effectively repudiated and reversed its earlier *Brand Tarzana v. ILWU* Memorandum Decision. Anti-assignment in the case of *Brand Tarzana v. ILWU* had been considered a "litigation defense" and not a substantive basis for claim denial - - but this "litigation defense" framework only lasted in this Circuit for three years until it was rejected in *Beverly Oaks* on December 17, 2020.  The *Beverly Oaks* panel decided that there was "no rationale" for condoning an insurer or plan administrator's course of conduct in failing to raise the anti-assignment provision during the administrative claims process and then later asserting that provision as a "litigation defense" to avoid payment of benefits.  The *Beverly Oaks* Court found that the *Brand Tarzana v. ILWU* "litigation defense" framework as a basis to deny waiver of the anti-assignment clause left an

– 22 –

insurer or plan administrator unaccountable for prior conduct contrary to its litigation provision.

52.     Indeed, taking it a step further, the *Beverly Oaks* Court further concluded that Blue Cross in that case made an actionable misrepresentation to the surgery center plaintiff in *Brand Tarzana v. ILWU*, by stating that plaintiff was "eligible' to receive plan benefits.  The *Beverly Oaks* Court in its published opinion of December 17, 2020 concluded that this misrepresentation estopped Blue Cross from asserting the anti-assignment defense.

53.     Waiver and estoppel apply in this case to preclude an anti-assignment defense, just as they did in *Beverly Oaks,* and *Beverly Oaks* reopened the door for filing of ERISA benefits recovery actions by healthcare providers based on patient assignments of benefits.  The statute of limitations for the claims that are the subject of this lawsuit should be tolled for the three-year period in which the door to benefits recovery was improperly closed.

## C.     California Emergency Rule 9 Tolls the Statute of Limitations for 178 days between April 6, 2020 to October 1, 2020

54.     On March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the spread of Covid-19 in California. On March 19, 2020, a statewide stay-at-home order was issued.  On March 27, 2020, Governor Newsom issued Executive Order N-38-20 which, among other thing, gave the Judicial Council of California the authority to take actions necessary to maintain access to the essential operation of California's court system while protecting the health and safety of California residents.  Over the course of several months in 2020, the Judicial Council adopted 13 emergency rules.

55.     Amongst the thirteen emergency rules is Emergency Rule 9, which is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action. Under Emergency Rule 9, statute of limitations

– 23 –

that exceed 180 days are tolled between April 6, 2020 and October 1, 2020 (total of 178 days). HB Surgical proceeds with the claims against United based on the tolling of the statute of limitations during the period between April 6, 2020 to October 1, 2020 premised upon California Emergency Rule 9.  None of HB Surgical's claims should be barred by the statute.

### D. The Statute of Limitations for Breach of Contract does not begin to run until the Contract no Longer is Executory

56.   The Supreme Court in *Mather v. Mather* (1944) 25 Cal.2d 582, 586 stated:

> [T]the law recognizes, as a matter of classification, two kinds of contracts - - executory and executed.  The former is one in which some acts remain to be done, while the latter is one where everything is completed at the time of agreement, without any outstanding promise calling for fulfillment by the further act of either party.

57.   In general, insurance policies including health insurance plans require the policy holder to share a portion of the future financial risk covered by policy either through deductibles, self-insured retentions or retrospective premiums. In healthcare insurance policies where the insurer has a continuing obligation to provide coverage and the insured has continuing obligation to pay standard premium, deductible, co-pay, the insurance contract is an executory contract.  The insurance policy in essence is an agreement for the insured to pay the insurer for continuously providing coverage and therefore is an executory contract.

58.   Under California law, statutes of limitations for breach of contract do not commence to run as long as the contract is executory. In *Lubin* v. *Lubin* (1956) 144 Cal.App.2d 781, 791 the Court stated:

> "In those cases where a continuing contract involves the rendering of benefits to the plaintiff before the date for final performance the rule is as stated in 16

– 24 –

California Jurisprudence, section 110, page 511: 'In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action.' " *Oil Base, Inc. v. Cont'l Cas. Co.* (1969) 271 Cal. App. 2d 378, 389–90 (citations omitted).

59.     In *Oil Base,* the insured sued the insurer for breach of contract and reformation. The trial court entered judgment for the insurer based on its determination that the claims were barred by the statute of limitations. The Court of Appeal reversed based on the continuing executory nature of the liability insurance policy issued by Continental. Similar to *Oil Base,* as the insurer, United has a continuing duty to provide coverage under the health insurance plan for covered services and the patients/insured likewise have the continuing obligation under the Policy to pay their premium in installments and cover their co-pay and deductibles for the services received.

60.     Each Insurance Plan in this action remains executory as long as the Insured Patient/Beneficiary has premium payment obligations, deductible and co-payments and United has a continued obligation to provide coverage for services rendered. As the obligations to pay co-pay and deductible continues and the United's obligations to pay for covered expenses continues with respect to claims in Exhibit A, the statute of limitations has not matured and has not begun to run until either the duty to pay premium, co-pay and/or deductible has extinguished, or the ERISA Plan has been rescinded or terminated by United.  None of HB Surgical's claims should be barred by the statute.

///

///

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

# FIRST COUNT
## (Against United Defendants)

### Enforcement Under 29 U.S.C. Section 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. Section 1132 (G)(1)

61.    The allegations of the prior paragraphs (paragraphs 1 to 60) of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

62.    This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with ERISA Plans administered and/or underwritten by United.

63.    HB Surgical seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. section 1132 (a)(1)(B); and under 29 U.S.C. section 1132 (g)(1) for recovery of reasonable attorney's fees and costs.  HB Surgical has standing to pursue these claims as the assignee of member benefits.  As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. section 1132 (a)(1)(B) to be brought directly against United as the party with actual control over the benefit and payment determinations with respect to HB Surgical's claims.

64.    By reason of the foregoing, HB Surgical is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and HB Surgical seeks recovery of such benefits by way of the present action.

65.    29 U.S.C. section 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  HB Surgical has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven

at trial.

WHEREFORE, Plaintiff prays for judgment against United Defendants as follows:

1. For damages against United Defendants in an amount to be proven at trial in connection with the healthcare benefits claim properly due and payable with respect to the services rendered to the Patients identified in Exhibit A hereto under the terms of the ERISA Plans at issue in this case.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial.

4. For such other relief as the Court may deem just and proper.

**Dated:** March 7, 2023                    Respectfully submitted,

**WILLIAMS WOLLITZ HAKAKIAN PC**


By:   /s/ Mina Hakakian

Mina Hakakian,
Attorney for Plaintiff HB Surgical Arts
LLC

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**